UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. |
| MARK J. AHN, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (the "Commission"), alleges the following against defendant, Mark J. Ahn.

## PRELIMINARY STATEMENT

1. This case involves illegal insider trading by Oregon resident Mark J. Ahn in the securities of Dimension Therapeutics, Inc. ("Dimension"), a publicly-traded Massachusetts-based pharmaceutical company. Specifically, Ahn personally profited from trades he made on the basis of confidential and material nonpublic information in advance of an August 25, 2017 public announcement that Dimension had agreed to be acquired by Maryland-based biotechnology company REGENXBIO Inc. ("Regenx").

2. Before the August 25, 2017 public announcement, Dimension had been considering possible offers from several suitors. Discussions regarding Dimension's possible acquisition had begun no later than April 2017 and involved several companies that were

1

interested in bidding to acquire Dimension. One of the potential suitors was a New York-based biopharmaceutical company, Abeona Therapeutics, Inc. ("Abeona").

3. Ahn, a former member of Abeona's board of directors, was engaged as a consultant to Abeona in early 2017 and, in that role, was intimately involved in Abeona's internal discussions about whether and how much to bid to acquire Dimension. In addition, Ahn was privy to details about Abeona's eventual offers to acquire Dimension. Ahn ultimately learned that Abeona and others planned to offer to purchase Dimension's outstanding stock for more than its then-current market value—a premium that would mean Dimension's stockholders stood to significantly profit from the transaction. Further, because there were multiple bidders, Ahn knew that Dimension was likely to be acquired. Ahn was bound to hold all of the nonpublic information he learned in his role as an Abeona consultant in strict confidence, and not to trade on the basis of that information for his own benefit.

4. Between July 21 and August 7, 2017, Ahn acquired approximately $38,891 worth of Dimension stock based on the extensive confidential nonpublic information he learned through his consulting role at Abeona. Dimension's stock price more than doubled after the August 25, 2017 public announcement that Dimension would be acquired and Ahn reaped illicit profits totaling $48,874 when he sold his Dimension shares after the acquisition was made public.

5. By knowingly or recklessly engaging in the conduct described in this Complaint, Ahn violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

6. The Commission seeks an injunction against future violations, civil penalties, and an officer-and-director bar.

**JURISDICTION AND VENUE**

7. The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1].

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa]. The Defendant has directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

9. Venue in this district is proper under 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because the acts, practices, transactions and courses of business constituting the alleged securities law violation(s) occurred in substantial part within this district.

**DEFENDANT AND RELEVANT ENTITIES**

10. Mark J. Ahn, age 57, is a resident of Lake Oswego, Oregon.

11. Dimension was a Cambridge, Massachusetts-based pharmaceutical company that engaged in the development of gene therapy treatments for rare genetic disorders. At all relevant times, Dimension's stock was quoted on NASDAQ Global Markets under the symbol "DMTX." On August 25, 2017, Dimension publicly announced that Regenx had agreed to acquire it. Ultimately, a different company, California-based pharmaceutical company, Ultragenyx Pharmaceuticals, Inc., acquired Dimension.

12. Abeona is a New York, New York-based biopharmaceutical company in the business of developing gene and cell therapy for life-threatening rare genetic diseases.

## FACTUAL ALLEGATIONS

### A. Ahn's Obligations to Keep Abeona's Proprietary Information Confidential

13. Ahn served on Abeona's board of directors from 2006 until 2017 (including as executive vice chairman from 2015 until 2017).

14. One of Ahn's primary responsibilities while he was a director was to identify business opportunities for Abeona, including potential mergers and acquisitions, which entailed working closely with Abeona's chief executive officer ("CEO"), its chief operating officer (the "COO"), and the executive chairman of its board of directors (the "Executive Chairman") (collectively, the "Senior Executives").  Abeona provided Ahn access to its confidential proprietary information and internal business strategy as part of Ahn's efforts to develop business opportunities for Abeona.

15. On January 9, 2017, Ahn resigned from Abeona's board of directors.  On or about January 16, 2017, he entered into a consulting agreement ("Consulting Agreement") with Abeona to continue to assist the company with business development.

16. Under the Consulting Agreement, Ahn agreed to use any confidential proprietary information he received from Abeona solely for the purposes of performing his duties as a consultant and not for his own benefit.  The Consulting Agreement further required that Ahn abide by any nondisclosure or confidentiality agreements between Abeona and third parties—such as potential acquisition targets—that restricted Abeona's use of information provided by a third party.  The Consulting Agreement defined proprietary information broadly to include "any and all information or data" in Abeona's possession.

17.     When he was an Abeona director, Ahn was also obligated to review, understand, and abide by Abeona's compliance policies, including its Code of Business Conduct and Ethics ("Code of Conduct") and Policy on Insider Trading and Confidentiality ("Insider Trading Policy"), both of which prohibited trading on the basis of material nonpublic information. Abeona's Code of Conduct further required its officers, directors, and employees to maintain the confidentiality of all nonpublic information entrusted to them and prohibited them from using such information to trade in securities or for any purpose other than the conduct of the Abeona's business. Abeona's Insider Trading Policy prohibited buying or selling securities while in possession of material nonpublic information. Ahn was on notice that insider trading is against the law, including through Abeona's Insider Trading Policy, which expressly notified recipients that both Abeona and its employees could face criminal and civil liability for engaging in such prohibited activity.

**B.     Ahn Learns that Abeona is Interested in Acquiring Dimension**

18.     On April 17, 2017, an investment bank contacted Abeona's Executive Chairman to solicit interest in a potential acquisition of Dimension. The Executive Chairman promptly informed Abeona's Senior Executives and Ahn, and Abeona's CEO immediately expressed interest in evaluating Dimension's assets. The next day, Ahn provided Abeona's Senior Executives with a preliminary analysis of some of Dimension's assets.

19.     On April 28, 2017, Abeona entered into a Mutual Nondisclosure Agreement with Dimension to facilitate sharing of relevant confidential, nonpublic information between the two companies. The Mutual Nondisclosure Agreement prohibited Abeona and its personnel from using any information Dimension provided to Abeona for any purpose other than considering a potential acquisition. Ahn became aware of the Mutual Nondisclosure Agreement at or near the time it was signed.

5

20.     Between April 28, 2017 and August 25, 2017, Abeona and Dimension exchanged proprietary and nonpublic information as part of evaluating a potential acquisition of Dimension by Abeona.  Ahn was extensively involved in that process for Abeona, and reviewed confidential information of both Dimension and Abeona so he could advise Abeona's Senior Executives on the merits of a potential acquisition of Dimension.

21.     Beginning in May 2017, Ahn, the Senior Executives, and Abeona's Director of Corporate Strategy ("DCS"), participated in weekly strategy meetings, which included a discussion of the potential Dimension acquisition (which, because it was highly confidential, had been internally code-named "Project Diamond" by Abeona and "Project Dionysius" by Dimension).

22.     In late-May 2017, Ahn was informed of a planned May 31, 2017 meeting at Dimension's offices for in-person discussions about a potential acquisition.  Ahn helped Abeona's COO and other Abeona executives prepare for the meeting.

23.     During or shortly after the May 31, 2017 meeting at Dimension's offices, Abeona made its first proposal to acquire Dimension.  Then, on June 13, 2017, Abeona's COO informed Ahn and others that Dimension had countered with a request for more information and a higher bid.

24.     On June 23, 2017, Ahn learned that Dimension was seeking other potential acquirers and that Dimension intended to select a limited number of bidders with whom to negotiate.  Ahn expressed his support for Abeona acquiring Dimension.

25.     Within a week, Abeona's COO circulated a draft of a second proposal to acquire Dimension to Ahn and the other Senior Executives.  This second proposal included an offer by Abeona to acquire Dimension's outstanding stock at an approximately 55% premium over its

then-current market value. Ahn responded that the proposal "looks great" and suggested some revisions. On or about July 6, 2017, Ahn learned that Abeona had submitted this second proposal to acquire Dimension.

### C.   Ahn Buys Dimension Stock After Obtaining Inside Information

26. After Abeona submitted its second proposal to acquire Dimension, Ahn began buying Dimension stock. In total, between July 21 and August 7, 2017, Ahn purchased 27,868 Dimension shares at a cost to him of approximately $38,891.

27. On July 21, 2017, Ahn placed a limit order (an order to purchase a stock at or below a specified price) to purchase 10,000 Dimension shares at $1.35 per share. This order was partially filled for 2,868 shares at a cost of $3,880.

28. On July 31, 2017, Ahn placed a limit order to purchase 25,000 Dimension shares at $1.40 per share. This order was filled on the following dates: 2,532 shares on July 31 at a cost of $3,551; 2,741 shares on August 1 at a cost of $3,844; 10,199 shares on August 2 at a cost of $14,278; 1,716 shares on August 3 at a cost of $2,402; 1,017 shares on August 4 at a cost of $1,423; and 6,795 shares on August 7 at a cost of $9,513.

29. Between July 31, 2017 and August 7, 2017, while Ahn's orders were being filled, Ahn obtained additional information from Abeona and Dimension, reinforcing the information he had already obtained that Dimension intended to agree to an acquisition by one of the bidders.

30. On July 31, 2017, Ahn received a copy of a revised proposal for Abeona to acquire Dimension. This third proposal offered to purchase all outstanding shares of Dimension at a 90% premium over its then-current market value. That evening, Abeona's Executive Chairman confirmed to Ahn that the third proposal had been sent to Dimension.

31. On August 2, 2017, Abeona's Executive Chairman informed Ahn that Dimension had requested that Abeona provide any revisions to its proposal in advance of Dimension's board

of directors meeting to evaluate acquisition bids from various companies, which was scheduled for the following week. The Executive Chairman also forwarded Ahn an email from Dimension that indicated there was fierce competition among the various bidders.

32. Between August 3 and August 6, 2017, Ahn had numerous communications with Abeona executives about the status of Abeona's bid to acquire Dimension and Dimension's ongoing due diligence about the potential transaction.

33. On August 17, 2017, Abeona submitted its best and final proposal to acquire Dimension, but learned that it had lost out to another bidder at or near the time Dimension publicly announced the planned merger on August 25, 2017. That same day, Dimension's share price more than doubled, rising by 162.5%. The price rose from a closing price of $1.20 per share on August 24 to a closing price of $3.15 per share on August 25, 2017.

34. On September 5 and 6, 2017, Ahn sold all his Dimension shares for a profit of $48,874.

### D. Ahn Violated His Duty to Abeona by Misappropriating Material Nonpublic Information

35. Ahn owed Abeona: (1) a contractual duty and (2) a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to hold the information relating to Abeona's contemplated purchase of Dimension in strict confidence and not to use any such information for personal gain.

36. Ahn knew that the confidentiality provisions in his Consulting Agreement expressly provided that: (a) he was only permitted to use Abeona's confidential, proprietary information in furtherance of his work for the company and not for his personal use; and (b) he was required to abide by any confidentiality provisions that Abeona entered into with third parties.

37.     Ahn also owed Abeona a fiduciary duty based on the long-standing relationship of trust and confidence between him and Abeona.  Ahn was a former executive vice-chairman of Abeona's board of directors, who had sourced business deals for Abeona, and Abeona had a history of entrusting him with confidential information.

38.     Ahn intentionally or recklessly violated both the contractual and fiduciary duties he owed Abeona by using the material, nonpublic information he obtained in the course of his work for Abeona to trade in Dimension's stock for his personal benefit.

## CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)**

39.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 38 above.

40.     By engaging in the conduct described above, Ahn, directly or indirectly, acting knowingly or recklessly, in connection with the purchase or sale of securities, by the use of means and instrumentalities of interstate commerce, or of the mails, or of a national securities exchange:  (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon certain persons.

41.     As a result, Ahn violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that this Court:

A. Enter a permanent injunction restraining Ahn and each of his agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

B. Order Ahn to pay an appropriate civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

C. Prohibit Ahn from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.SC. § 78(o)(d)];

D. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

E. Award such equitable and other relief as the Court deems just and proper.

## JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

*Alfred A. Day*
Alfred A. Day (BBO# 654436)
Martin F. Healey (BBO# 227550)
Asita Obeyesekere (DC Bar# 451637)
Nita Klunder (BBO# 689304)
33 Arch Street, 24th Floor
Boston, MA  02110
(617) 573-437 (Day)
(617) 573-4590 (Facsimile)
DayA@sec.gov

Dated:  February 5, 2021